1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ROBERT JOSEPH MCCARTY,

        Plaintiff,

v.

JOHN V. ROOS, et al.,

        Defendants.

2:11-CV-1538 JCM (RJJ)

**ORDER**

Presently before the court is John Roos and Joseph Koen's ("federal defendants") motion to dismiss official capacity claims. (Doc. # 81). *Pro se* plaintiff Robert Joseph McCarty filed an opposition (doc. # 87), and filed a supplemental opposition (doc. # 93).[1] Federal defendants replied. (Doc. # 96).

Also before the court is federal defendants' motion to dismiss individual capacity claims. (Doc. # 82). Plaintiff filed an opposition (doc. # 91), and federal defendants replied (doc. # 97).

Also before the court is defendants Patrick Saunders and Charlene Hoerth's ("state defendants") motion to dismiss individual capacity claims. (Doc. # 100). Plaintiff filed an opposition (doc. # 103), and state defendants replied. (Doc. # 111).

**I.      Factual background**

On September 26, 2011, plaintiff, proceeding *pro se*, filed a civil rights action against Nevada's attorney general, state defendants, and federal defendants. State defendants are Nevada

---

[1] Plaintiff filed the supplemental opposition pursuant to court order. (*See* doc. # 90).

James C. Mahan
U.S. District Judge

1   Department of Public Safety employees. Federal defendants are the U.S. Ambassador to Japan, Roos,

2   and a U.S. consular officer, Koen. Plaintiff sues all defendants in their individual and official

3   capacities.[2]

4       Plaintiff challenges the constitutionality of the Sex Offender Registration Notification Act

5   ("SORNA"). Plaintiff alleges that he was convicted in 2003, of "Quasi Indecent Assault" in Japan.

6   Plaintiff alleges that the Japanese conviction was obtained in a judicial system that is deficient of

7   constitutional safeguards, including substantive and procedural due process.

8       Upon return to the United States, plaintiff was required to register as a tier I sex offender

9   under SORNA. Plaintiff claims that this registration requirement violates his civil and constitution

10  rights.

11      Plaintiff alleges that federal defendants failed to follow "proper procedures" to "protect" him,

12  resulting in the violation of his right to due process. Plaintiff alleges that state defendants wrongfully

13  designated plaintiff as a sex offender and failed to act to redress the egregious injustice of plaintiff's

14  registration status.

15      Plaintiff seeks injunctive relief including (1) a declaration that he was denied due process and

16  thus cannot be made to register as a sex offender; (2) expungement of federal and state files relating

17  to his designation as a sex offender; and (3) a full name and identity change. Plaintiff also seeks

18  $650,000 in damages.

19  **II.    SORNA**

20      **A.    Background**

21      In 2006, Congress passed the Adam Walsh Child Protection and Safety Act of 2006. Pub.

22  L. No. 109-248, 120 Stat. 587; 42 U.S.C. § 16901 *et seq.* Included among the provisions in the act

23  was an effort by Congress to codify a comprehensive set of standards to govern state sex offender

24  registration and notification programs through SORNA. Pub. L. No. 109-248, Title I, 120 Stat. at

25  590.

26  . . .

27  ───────────────

28      [2] The court has already dismissed Nevada's attorney general Catherine Cotez Masto. (*See* doc. # 70).

James C. Mahan
U.S. District Judge

In 2006, "Congress concluded that the patchwork of standards that has resulted from piecemeal amendments should be replaced with a comprehensive new state of standards–the SORNA reforms[ ]–that would close potential gaps and loopholes under the old law, and generally strengthen the nationwide network of sex offender registration and notification programs." *The National Guidelines for Sex Offender Registration and Notification*, FINAL GUIDELINES (June 2008) at 4, *available at* http://www.ojp.usdoj.gov/smart/pdfs/final_sornaguidelines.pdf ("SORNA Guidelines").

### B.    Compliance

Among other things, in order to be SORNA-compliant, state registrations must collect various specified types of information, such as names, addresses, physical descriptions, criminal history information, and photographs of offenders. 42 U.S.C. § 16914 (a) & (b).

SORNA also increased the time of registration for certain classes of sex offenders based on the type of conviction or recidivism, requiring 15 years for tier I offenders, absent a reduction based on maintaining a "clean record" for 10 years; 25 years for tier II offenders; and lifetime for tier III offenders, absent a reduction based on maintaining a "clean record" for 25 years for juvenile delinquent offenders. 42 U.S.C. § 16915 (a) & (b).

SORNA requires in-person verification of registry information, 42 U.S.C. § 16916, and permits for public dissemination of certain information on internet sites, 42 U.S.C. § 16918.

"SORNA establishes a national baseline for sex offender registration and notification programs. In other words, the Act generally constitutes a set of minimum national standards and sets a floor, not a ceiling, for jurisdictions' programs." SORNA Guidelines, at 6 (emphasis in original).

SORNA also enacted 18 U.S.C. § 2250, which establishes criminal liability for a sex offender who "knowingly fails to register or update a registration . . . ." *See* Pub. L. No. 109-248, § 141(a).

. . .

. . .

. . .

. . .

**C.      Foreign conviction provision**

With respect to foreign convictions, SORNA provides:

A foreign conviction is not a sex offense for the purposes of this subchapter if it was not obtained with sufficient safeguards for fundamental fairness and due process for the accused under guidelines or regulations established under section 16912 of this title.

42 U.S.C. § 16911(5)(B).

The "guidelines" referred to are the SORNA Guidelines issued by the Attorney General, which adopted the following standards with respect to foreign convictions:

Sex offense convictions under the laws of Canada, United Kingdom, Australia, and New Zealand are deemed to have been obtained with sufficient safeguards for fundamental fairness and due process, and registration must be required for such convictions on the same footing as domestic convictions.

*Sex offense convictions under the laws of any foreign country are deemed to have been obtained with sufficient safeguards for fundamental fairness and due process if the U.S. State Department, in its Country Reports on Human Rights Practices, has concluded that an independent judiciary generally (or vigorously) enforced the right to a fair trial in that country during the year in which the conviction occurred. Registration must be required on the basis of such convictions on the same footing as domestic convictions.*

With respect to sex offense convictions in foreign countries that do not satisfy the criteria stated above, a jurisdiction is not required to register the convicted person if the jurisdiction determines—through whatever process or procedure it may choose to adopt—that the conviction does not constitute a reliable indication of factual guilt because of the lack of an impartial tribunal, because of denial of the right to respond to the evidence against the person or to present exculpatory evidence, or because of denial of the right to the assistance of counsel.

SORNA Guidelines at 16-17, 73 Fed. Reg. At 38050-51 (emphasis added).

The State Department Country Reports for Japan in 2002 and 2003 found that the Japanese government "generally respected in practice the constitutional provisions for the right to a speedy and public trial by an impartial tribunal in all criminal cases." U.S. Department of State, County Reports on Human Rights (March 31, 2003), *available at* http://www.state.gov/j/drl/rls/hrrpt/2002/18246.htm ("2002 Japan Country Report"); *see also* U.S. Department of State, County Reports on Human Rights (February 25, 2004), *available at* http://www.state.gov/j/drl/rls/hrrpt/2003/27772.htm ("2003 Japan Country Report").

James C. Mahan
U.S. District Judge

- 4 -

**III.    Legal standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 1949.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." Id. (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

James C. Mahan
U.S. District Judge

- 5 -

1    opposing party to defend itself effectively. Second, the factual allegations that are taken as true must

2    plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to

3    be subjected to the expense of discovery and continued litigation." *Id.*

4    **IV.    Discussion**

5          As an initial matter, the court acknowledges that the amended complaint and oppositions to

6    the instant motions are *pro se*, which are held to less stringent standards. *Erickson v. Pardus*, 551

7    U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint,

8    however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

9    by lawyers.") (internal quotations and citations omitted).

10       **A.    Federal defendants' motion to dismiss official capacity claims (doc. # 81)**

11         Plaintiff's amended complaint attacks the constitutionality of SORNA's foreign conviction

12   provision as well as the conduct of federal defendants in relation to the enforcement of this

13   provision. Specifically, plaintiff alleges that this provision is unconstitutionally vague, violates

14   plaintiff's procedural due process, and violates plaintiff's substantive due process.

15           **I.    Unconstitutionally vague**

16         Plaintiff alleges that the foreign convictions provision is unconstitutional as applied to him

17   and on its face.

18         "To determine whether a statute is unconstitutionally vague as applied, a two-part test is

19   used: a court must first determine whether the statute gives the person of ordinary intelligence a

20   reasonable opportunity to know what is prohibited and then consider whether the law provides

21   explicit standards for those who apply it." *Pest Comm. v. Miller*, 626 F.3d 1097, 1111 (9th Cir. 2010)

22   cert. denied, 132 S. Ct. 94, 181 L. Ed. 2d 23 (U.S. 2011) (citation omitted). Outside the First

23   Amendment context, a party bringing a facial challenge on vagueness grounds "must demonstrate

24   that the enactment is impermissibly vague in all of its applications"; hence, "if the statute is

25   constitutional as applied to the individual asserting the challenge, the statute is facially valid." *United*

26   *States v. Dang*, 488 F.3d 1135, 1141 (9th Cir. 2007) (citation omitted).

27

28

**James C. Mahan**
**U.S. District Judge**

              - 6 -

Title 42 U.S.C. § 16911(5)(B) satisfies prong one. The provision gives a person of ordinary intelligence express notice that to be considered a sex offense requiring registration under SORNA, a foreign conviction must meet standards for fairness and due process that are established by specific guidelines or regulations pursuant to 42 U.S.C. § 16912–namely, the SORNA Guidelines issued by the Attorney General.

Title 42 U.S.C. § 16911(5)(B) satisfies prong two. The standards outlined in the SORNA Guidelines explicitly state how courts should treat foreign convictions depending on the country of origination. To this point, it appears that plaintiff, appearing *pro se*, was able to determine the standards that applied to his conviction. This is demonstrated by plaintiff vigorously contesting the findings of the 2002 and 2003 Japan Country Reports.

Thus, plaintiff has failed to allege sufficient facts to establish that the foreign convictions provision of SORNA is unconstitutionally vague as applied to him. Therefore, he has failed to establish that it is unconstitutionally vague on its face. *See Dang*, 488 F.3d at 1141.

### ii.    Procedural due process

In evaluating procedural due process, the Ninth Circuit has outlined a two-step inquiry: "The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012) cert. denied, 133 S. Ct. 234 (U.S. 2012) (citation omitted).

It is difficult to discern what protectable liberty or property interest plaintiff alleges to be burdened by SORNA. However, the Ninth Circuit has recognized that "the Supreme court has held that adverse publicity or harm to the reputation of sex offenders does not implicate a liberty interest for the purposes of due process analysis." *Id.* (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003)). And to the extent that other protectable liberty or property interests are allegedly interfered with, plaintiff has failed to identify the source of these rights to support the notion that he has a broader due process right. *See id.*

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    Even if there is a protectable interest that this court has failed to ferret out of plaintiff's

2    amended complaint, plaintiff has failed to allege sufficient facts to establish insufficiency of process.

3    The Ninth Circuit has held that because SORNA's registration requirements "turn on an offender's

4    conviction alone–a fact that a convicted offender has already had a procedurally safeguarded

5    opportunity to contest–no additional process is required for due process." *Juvenile Male*, 670 F.3d

6    at 1014 (citations omitted). And plaintiff clearly admits the existence of his conviction and does not

7    contest this fact.

8    To the extent that plaintiff alleges that he did not receive a fair trial in Japan or that the 2002

9    and 2003 Japan Country Reports are inaccurate, additional process is *still* unnecessary. "Additional

10   process is only necessary where it gives a sex offender the ability to prove or disprove facts related

11   to the applicability of the registration requirement." *Juvenile Male*, 670 F.3d at 1014. Plaintiff does

12   not allege any facts to demonstrate the he received an unfair trial that were not considered by the

13   Japan Country Reports. Further, plaintiff has failed to point to any authority on which he bases his

14   conclusion that the reports relied upon are inaccurate. As such, there are no alleged facts discernable

15   by the court related to the applicability of the registration requirement.

16   Plaintiff alleges several deficiencies in the Japanese criminal process that prevented him from

17   receiving a fair trial. However, these deficiencies–that is, the absence of a trial by jury, issues relating

18   to obtaining qualified interpreters for foreign defendants, and issues relating to defendants' access

19   to police records and other evidence–were acknowledged in the 2002 and 2003 Japan Country

20   Reports. And both years, these reports, nonetheless concluded that Japan "generally respected in

21   practice the constitutional provisions for the right to a speedy and public trial by an impartial tribunal

22   in all criminal cases." 2002 Japan Country Report and 2003 Japan Country Report.

23   According to the 2002 and 2003 Japan Country Reports, a criminal defendant in Japan was

24   presumed innocent, assured a public trial by an independent civilian court with defense counsel, had

25   the right to cross-examination, had the right against self-incrimination, had access to private counsel,

26   was protected from the retroactivity of laws, and could appeal a verdict to a higher court including

27   the Supreme Court. *Id.* Plaintiff does not allege that he was denied any of these rights.

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

1    Plaintiff does not point to any authority to support the allegation that the 2002 and 2003

2    Japan Country Reports are inaccurate. Without a basis for finding these reports unreliable, the court

3    finds that relying on these reports, for the purposes of applying SORNA, appropriate.[3] Thus, the

4    court finds that plaintiff does not allege sufficient facts to show that the process provided by SORNA

5    is inadequate.

6        Plaintiff also seems to suggest that SORNA should provide an offender an individual

7    opportunity to show that his foreign conviction was not valid or fairly obtained. However, this would

8    require the court to review facts and events of another country's court proceedings and substitute its

9    own judgment for that of a foreign court, before the conviction could be treated as a registerable

10   offense. *See Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991). The court declines to do so.

11   Such a scheme would be unworkable and at odds with the principles of comity. *Cf. id.* The court

12   finds that such a structure would be inconsistent with the many areas of law in which foreign

13   convictions are given effect without inquiring into the validity of individual convictions.

14       Thus, the court finds that plaintiff has failed to allege sufficient factual matter to state a claim

15   for procedural due process "that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949.

16                    **iii.    Substantive due process**

17       For a substantive due process claim, the Supreme Court has described the "fundamental"

18   rights protected by substantive due process as "those personal activities and decisions that this Court

19   has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of

20   constitutionally ordered liberty, that they are protected by the Fourteenth Amendment." *Juvenile*

21   *Male*, 670 F.3d at 1012 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997)). "Those

22   rights are few, and include the right to marry, to have children, to direct the education and upbringing

23   of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to

24   refuse unwanted lifesaving medical treatment." *Id.*

25   . . .

26

27       [3] The court notes that in *Small v. United States*, 544 U.S. 385 (2005), the Supreme Court relied on the State
     Department's Country Reports for assessment of whether certain foreign legal systems comported with "an American

28   understanding of fairness." *Id.* at 389. Thus, the court finds no reason to discount the findings in the reports.

**James C. Mahan**
**U.S. District Judge**

1    Further, a plaintiff must provide "a careful description of the asserted fundamental liberty

2    interest," *Glucksberg*, 521 U.S. at 721, or "a narrow definition of the interest at stake," *Raich v.*

3    *Gonzalez*, 500 F.3d 850, 863, (9th Cir. 2007) (citing *Glucksberg*, 521 U.S. at 722).

4    Lastly, the Ninth Circuit has stated that "individuals convicted of serious sex offenses do not

5    have a fundamental right to be free from sex offender registration requirements." *Juvenile Male*, 670

6    F.3d at 1012 (relying on *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004)).

7    Plaintiff does not allege violation of any of the fundamental rights identified by the Supreme

8    Court. *See Juvenile Male*, 670 F.3d at 1012. Further, plaintiff has failed to provide a "careful

9    description of the asserted fundamental liberty interest." *See Glucksberg*, 521 U.S. at 721. Thus, the

10   court need not consider whether this unidentified right is "deeply rooted in our history and traditions

11   . . . ." *Juvenile Male*, 670 F.3d at 1012.

12   Therefore, the court finds that plaintiff's amended complaint does not state a claim for

13   substantive due process.

14   ### iv.    Other rights

15   Plaintiff alleges that several of his civil rights were violated by federal defendants.

16   Specifically, plaintiff alleges that his "[r]ight to live and assemble on specific properties; right to

17   petition the Government for a redress of grievances; right to bear arms; right to be secure in person;

18   no person held to answer for infamous crime (sex offender) without legal safeguards; right to

19   impartial jury; right not to be put twice in jeopardy; right to substantive due process and procedural

20   due process; right of trial by jury; cruel and unusual punishment inflicted; no law can be construed

21   to deny the rights of an American Citizen; and the right to vote. Plaintiff was deprived of liberty and

22   property as well as other capriciously imposed limits on employment housing and other aspects of

23   life." (Doc. # 8, 9).

24   As to the rights that are implicated by the criminal justice system, such as double jeopardy

25   and cruel and unusual punishment, SORNA cannot violate these rights because it is a civil regulatory

26   scheme. *See Juvenile Male*, 670 F.3d at 1013-14. As to the right to petition for redress of grievances,

27

28

**James C. Mahan**
**U.S. District Judge**

- 10 -

1   the right to bear arms, and the right to vote, plaintiff does not provide a sufficient factual basis to

2   determine how SORNA's registration requirements violate these rights.

3        As to the right to trial by jury, to the extent that plaintiff is referring to his lack of jury trial

4   in Japan, plaintiff fails to explain how SORNA confers or deprives this right or why he was entitled

5   to a jury trial in Japan. As to the right to live and assemble on specific properties, plaintiff does not

6   explain how SORNA's requirement to report certain information associated with travel places an

7   unconstitutional burden on his right to travel. While the requirement is burdensome, it is not enough

8   to establish that SORNA violates plaintiff's right to travel. *See United States v. Ambert*, 561 F.3d

9   1202, 1210 (11th Cir. 2009).

10                  **v.   Federal defendants' conduct**

11       Plaintiff alleges that the rights plaintiff in his amended complaint were violated by federal

12  defendants. Specifically, plaintiff alleges that federal defendants, despite "receiv[ing] multiple

13  registered letters with full knowledge of the deleterious effects of the results of SONRA foreign

14  conviction law" and being aware of the alleged unfairness of the Japanese criminal justice process

15  and the specific's of plaintiff's trial, failed to "protect the Plaintiff's rights" and "follow proper

16  procedures," and that "[a]s retribution and reprisal" for the letters, they "failed to ensure that when

17  Plaintiff returned to the United States there was no requirement to register as a Sex Offender." (Doc.

18  # 8, 3-4, 9-10).

19       However, plaintiff fails to identify any legal authority suggesting that federal defendants, in

20  their official capacities, owed plaintiff an affirmative duty to "ensure" that he would not have to

21  register as a sex offender under SORNA, or that failing to perform this "duty" would violate any of

22  plaintiff's civil or constitutional rights.

23       The court finds that plaintiff's amended complaint has not allege facts that allows the court

24  to draw a reasonable inference that federal defendants, in their official capacities, are liable for the

25  alleged misconduct. *Iqbal*, 129 S.Ct. at 1949.

26  . . .

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

### vi.     Federal official immunity against damages claims

Sovereign immunity shields the federal government from suit, including suits against federal officials in their official capacities, in the absence of a waiver. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Balser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003). That waiver cannot be implied, but must be unequivocally expressed in the statutory text. *Lane v. Pena*, 518 U.S. 187, 192 (1996). If a plaintiff fails to carry the burden of showing that his suit falls within such an unequivocally expressed waiver, subject-matter jurisdiction is lacking, and the suit must be dismissed. *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008).

Here, plaintiff has not identified any statute unequivocally waiving the United States' sovereign immunity from his claim of monetary damages.

To the extent that plaintiff seeks damages against the United States under 42 U.S.C. § 1983, that statute only creates a cause of action against persons acting under color of state law. *See Stonecipher v. Bray*, 653 F.2d 398, 401 (9th Cir. 1981) ("Section 1983 allows a party to bring a civil action for constitutional deprivations against persons acting under color of state law. [Plaintiff] has no cause of action against the IRS under section 1983 because the IRS is a federal agency and its agents performed no acts under color of state law.").

Here, plaintiff does not allege facts that federal defendants performed any acts under color of state law, and thus plaintiff has failed to state a claim against federal defendants in their official capacities under § 1983.

To the extent that plaintiff seeks damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), it is well established that *Bivens* actions can only be brought against federal employees in their individual capacities. *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 70, 122 S. Ct. 515, 521, 151 L. Ed. 2d 456 (2001); *see also Meyer*, 510 U.S. at 484-86.

Here, plaintiff cannot assert a *Bivens* action against federal defendants in their official capacities.

. . .

. . .

James C. Mahan
U.S. District Judge

- 12 -

**B.      Federal defendants' motion to dismiss individual capacity claims (doc. # 82)**

Federal defendants, in their individual capacities, move to dismiss plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; under 12(b)(5) for lack of proper service; and under 12(b)(6) for failure to state a claim upon which relief can be granted.

**I.      Lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)**

To bring an action for damages against a federal employee in his individual capacity, plaintiff must show that the court in which he has brought suit has personal jurisdiction over the defendant. *See Gilbert v. DaGrossa* , 756 F.2d 1455, 1459 (9th Cir. 1985). On a motion to dismiss for personal jurisdiction decided solely on the pleadings, a plaintiff bears the burden of demonstrating that his or her allegations, taken as true, would establish a *prima facie* case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff must demonstrate jurisdiction over each defendant individually. *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

In district courts in Nevada, assertion of personal jurisdiction must comport with due process. *Fiore v. Walden*, 688 F.3d 558, 573 (9th Cir. 2012). For general jurisdiction, plaintiff must demonstrate that each nonresident defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

For specific jurisdiction, plaintiff must establish that defendant's contacts with the forum are what gave rise to the suit. *Id.* at 801-02. That is, plaintiff must first demonstrate that the defendant purposefully directed his activities at the forum or consummated some transaction in the forum; and second, that the claim arises out of or relates to the defendant's forum-related activities. *Id.* at 802.

Plaintiff does not allege any facts that demonstrate that either federal defendant has "continuous and systematic" contacts with this forum. *Id.* at 801. Thus, plaintiff does not allege general jurisdiction.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

1    Further, plaintiff has not satisfied both prongs of specific jurisdiction. Plaintiff does not

2    allege that either Roos or Koen purposefully directed any act at Nevada giving rise to this lawsuit

3    or that they consummated any transaction in this forum giving rise to this lawsuit. That plaintiff must

4    register as a sex offender in Nevada is not sufficient to establish specific jurisdiction. Personal

5    jurisdiction hinges on the contacts of the defendant, and the fact that a plaintiff feels some harm

6    within a forum state does not mean the defendant has minimum contacts there. *See Pebble Beach*

7    *Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006); *Schwarzenegger*, 374 F.3d at 807. Thus, plaintiff

8    does not allege specific jurisdiction.

9              **ii.    Lack of proper service under Fed. R. Civ. P. 12(b)(5)**

10    To serve a United States employee in his individual capacity, a party must serve the United

11    States and the individual officer or employee under Fed. R. Civ. P. 4(e), (f), or (g). FED. R. CIV. P.

12    4(i)(3). Rule 4 must be "liberally construed" to uphold service so long as a party receives sufficient

13    notice of the complaint. *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir.

14    2009).

15    Rule 4(f) provides that service of process upon an individual abroad may be effected "by any

16    internationally agreed means reasonably calculated to give notice, such as those authorized by the

17    Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." FED. R. CIV.

18    P. 4(f)(1).

19    The United States, Mexico,[4] and Japan[5] are signatories to the Convention on Service Abroad

20    of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *available at*

21    http://www.hcch.net/upload/conventions/txt14en.pdf ("Hague Service Convention"), thus service

22    on both federal defendants must conform to the requirements of the convention. "[C]ompliance with

23    the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft*

24    *v. Schlunk*, 486 U.S. 694, 705, 108 S. Ct. 2104, 2111, 100 L. Ed. 2d 722 (1988).

25    . . .

26    _____

27              [4] Koen resides in Mexico.

28              [5] Roos resides in Japan.

**James C. Mahan**
**U.S. District Judge**

- 14 -

1    Article 5 of the Hague Service Convention provides the primary means by which service is

2    accomplished is through a receiving state's "Central Authority." Hague Convention, art. 5, Nov. 15,

3    1965, 20 U.S.T. 361, T.I.A.S. No. 6638. Japan and Mexico have designated their respective

4    ministries of foreign affairs as their "Central Authorities." Accession of Mexico to the Hague Service

5    Convention, 2117 U.N.T.S. 318, 321 ¶ 1: Ratification of Japan to the Hague Convention, 737

6    U.N.T.S. 410 n.1.

7    Article 21 also contemplates certain alternative methods of service under Article 8 and 10,

8    so long as the signatory state has not objected to those alternative means. Hague Service Convention,

9    art. 21.

10    Article 8 provides for service directly through the signatory state's diplomatic or consular

11    agents, while Article 10 makes clear that the convention does not interfere with the sending of

12    judicial documents directly to persons abroad via postal channels or by personal service through

13    judicial officers or other officials. Hague Service Convention, arts. 8 & 10.

14    Here, Plaintiff appears to have sent his amended complaint via certified mail to both

15    defendants, at the U.S. Embassy in Tokyo. Thus, plaintiff has not effectuated service through the

16    Central Authorities of Japan or Mexico pursuant to article 5 or through the diplomatic and consular

17    channels contemplated by article 8. Thus, the court turns to article 10 to determine if plaintiff has

18    substantially complied with this article.

19    Article 10 states:

20    Provided the State of destination does not object, the present Convention shall not
       interfere with

21    a) the freedom to send judicial documents, by postal channels, directly to persons
       abroad,

22    b) the freedom of judicial officers, officials or other competent persons of the State
       of origin to effect service of judicial documents directly through the judicial officers,

23    officials or other competent persons of the State of destination,
       c) the freedom of any person interested in a judicial proceeding to effect service of

24    judicial documents directly through the judicial officers, officials or other competent
       persons of the State of destination.

25

26    Hague Service Convention, art. 10.

27

28

**James C. Mahan**
**U.S. District Judge**

- 15 -

### a.      Service by Mail in Japan as to Roos

Japan has not objected to article 10(a); however, this article does not in itself affirmatively authorize service by international mail. *See Brockmeyer v. May*, 383 F.3d 798, 804 (9th Cir. 2003). Any affirmative authorization of service by international mail must come from the law of the forum in which the suit is filed. *Id.*

While Rule 4 is construed leniently, the court still finds that plaintiff has not sufficiently effectuated service on Roos. Rule 4(f)(2)(A) provides that service may be "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." *Id.* Japan's laws of civil procedure provide that service of process is a purely judicial function that may only be performed by an empowered governmental agency. *See* Minji Soshoho, 1996, art. 153 (Japan) ("Japanese Code of Civil Procedure"); G. Brian Raley, *A Comparative Analysis:  Notice Requirements in Germany, Japan, Spain, the United Kingdom and the United States*, 10 ARIZ. J. INT'L & COMP. L. 301, 315-17 (1993). Here, plaintiff does not appear to have served Roos via an "empowered governmental agency."

Rule 4(f)(2)(C)(ii) provides "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice, unless prohibited by the foreign country's law, by, using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." *Id.* Here, the clerk of the court did not did not address and send the summons or amended complaint.

Thus, the court finds that plaintiff has not effectuated service on Roos in compliance with Rule 4(f).[6]

### b.      Service by Mail in Mexico as to Koen

Mexico has objected to article 10(a). Accession of Mexico, 2117 U.N.T.S. 318, 321 IV, V. Thus, service through Mexico's Central Authority–that is, its ministry of foreign affairs–is the

---

[6] At this time, the court declines to order an alternate method of service. *See* FED. R. CIV. P. 4(f)(3) (affirmatively authoring the federal district court to direct any form of service that is not prohibited by an international agreement). Since plaintiff must amend his complaint, if he chooses to continue litigating this case, the court finds that plaintiff has an opportunity to comply with proper service as outlined in IV.B.ii.a & b.

James C. Mahan
U.S. District Judge

- 16 -

exclusive means by which effective service may be accomplished in Mexico. *See Cardona v. Kreamer*, 225 Ariz. 143, 235 P.3d 1030 (2010) ("Mexico's blanket objection to any alternative methods of service under Articles 8 and 10 renders service through its Ministry of Foreign Affairs the exclusive means available under the Convention."). Here, plaintiff did not serve Koen through Mexico's Central Authority, as such, there has not been sufficient service on Koen.

### c.    Re-attempt service on federal defendants

A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4. *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Nevertheless, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Id.* (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).

 However, actual notice will not provide the court with personal jurisdiction if the plaintiff did not substantially comply with Rule 4. *Id. Pro se* plaintiffs are held to a less stringent standard than those who are represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

Here, while it appears that plaintiff has not complied with Rule 4, the court finds that, in fairness, plaintiff may re-attempt service on Roos and Koen in their individual capacities. Pursuant to the magistrate judge's April 4, 2012, order, plaintiff may re-attempt service on unserved defendants if the marshal was unable to effect service the first time. (Doc. #31). Thus, the clerk of court shall issue new summons as to defendants Roos and Koen, and deliver same to the marshal for service. Plaintiff shall have twenty (20) days in which to furnish to the marshal the required forms SM-285. Within thirty (30) days after plaintiff receives copies of the completed USM-285 forms from the marshal, plaintiff must file a notice with the court identifying which defendants were served and which were not served, if any.

While the court permits plaintiff to re-attempt service on federal defendants in their individual capacities, plaintiff is advised that he is still required to familiarize himself with the

James C. Mahan
U.S. District Judge

1  Federal Rules of Civil Procedure as well as the local rules of this court. Failure to comply with these

2  rules could warrant future sanctions, including dismissal. *See Jacobsen v. Filler*, 790 F.2d 1362,

3  1364-65 (9th Cir. 1986) (holding that *pro se* parties are not excused from following the rules and

4  orders of the court).

5                              **iii.**        **Failure to state a claim under Fed. R. Civ. P. 12(b)(6)**

6        "[Q]ualified immunity protects government officials 'from liability for civil damages insofar

7  as their conduct does not violate clearly established statutory or constitutional rights of which a

8  reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

9  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies "regardless of whether

10 the government official's error is mistake of law, a mistake of fact, or a mistake based on mixed

11 questions of law and fact." *Pearson*, 555 U.S. at 231 (citation omitted).

12       In addressing qualified immunity, a court must determine (1) whether the facts alleged, taken

13 in the light most favorable to the party asserting the injury, show that the defendant's conduct

14 violated a constitutional right, and (2) whether that right was "clearly established." *Cmty. House, Inc.*

15 *v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194,

16 201 (2001), modified by *Pearson*, 555 U.S. 223). Addressing the two prongs of the test in this order

17 is often beneficial, but it is not mandatory. Courts may "exercise their sound discretion in deciding

18 which of the two prongs of the qualified immunity analysis should be addressed first in light of the

19 circumstances in the particular case at hand." *Cmty. House, Inc.*, 623 F.3d at 967; *see also Pearson*,

20 555 U.S. 235.

21                             **a.**        **Violated a constitutional right**

22       In a personal capacity suit, "each government official, his or her title notwithstanding, is only

23 liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949. However, plaintiff does not

24 sufficiently allege a violation of his constitutional rights. As discussed *supra*, IV.A.i-iv., plaintiff's

25 allegations have not established that SORNA's foreign convictions provision violates due process

26 or any of the other rights identified by plaintiff.

27 . . .

28

1    Further, plaintiff does not allege facts supporting a claim that either Roos or Koen are

2    personally, legally, responsible for SORNA's alleged violation of his due process or other rights.

3    Plaintiff does not allege that either Roos or Koen had authority to enforce SORNA against plaintiff.

4    Even plaintiff's allegation that Koen sent a letter to plaintiff telling plaintiff to "register

5    immediately" under SORNA, without more, does not establish that Koen's actions potentially caused

6    a violation of plaintiff's constitutional rights. Thus, any harm plaintiff claims to have suffered from

7    SORNA's requirements has not been sufficiently tied to defendants' conduct. *See Iqbal*, 129 S.Ct.

8    at 1949.

9    Lastly, Congress has provided immunity for good faith action under SORNA. *See* 42 U.S.C.

10   § 16929 ("The Federal Government, jurisdictions, political subdivisions of jurisdictions, and their

11   agencies, officers, employees, and agents shall be immune from liability for good faith conduct under

12   this subchapter."). To the extent that plaintiff alleges that federal defendants acted "maliciously,"

13   plaintiff has failed to identify any legal authority suggesting that federal defendants, in their

14   individual capacities, owed plaintiff an affirmative duty to "ensure" that he would not have to

15   register as a sex offender under SORNA, or that failing to perform this "duty" would violate any of

16   plaintiff's civil or constitutional rights.

17   On this prong alone, plaintiff fails to establish that federal defendants violated any of his

18   constitutional rights. If the facts alleged do not show conduct that violated a constitutional right, or

19   if that right was not clearly established, the defendant is immune from suit. *See Pearson*, 555 U.S.

20   at 243-44; *see also Bull v. City & County of San Francisco*, 595 F.3d 964, 971 (9th Cir. 2010) (en

21   banc). Thus, federal defendants are entitled to qualified immunity in their individual capacities.

22                          **b.      Right asserted clearly established**

23   Plaintiff must prove that the rights he alleges were violated were clearly established "in light

24   of the specific context of the case, not as a broad general proposition." *Cmty. House, Inc.*, 623 F.3d

25   at 967 (quoting *Saucier*, 533 U.S. at 201, modified on other grounds by *Pearson*, 555 U.S. 223).

26   Here, plaintiff's allegations fall short of this burden. Even assuming, *arguendo*, that

27   plaintiff's allegations established that SORNA's foreign convictions provision violated his

28

**James C. Mahan**
**U.S. District Judge**

constitutional rights, this would be a matter of first impression. Therefore, neither federal defendant could reasonably have been on notice that plaintiff's registration based on a foreign conviction would be unconstitutional. And even further, federal defendants could not have known that their failure to protect plaintiff from registering under SORNA violated his constitutional rights.

Plaintiff also fails to establish that this right was clearly established. Thus, federal defendants are entitled to qualified immunity in their individual capacities.

### c.     Individual immunity against injunctive relief

Declaratory or injunctive relief designed to affect the conduct of a government entity is available only in an official capacity suit. *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004). Thus, to the extend that plaintiff seeks injunctive relief against federal defendants in their individual capacities, the court dismisses these claims.

However, plaintiff may seek damages under *Bivens*, 403 U.S. 388 (1971), against federal defendants in their individual capacities. *See Malesko*, 534 U.S. at 70. But plaintiff has not pleaded a constitutional violation that would entitle him to relief, even though this remedy is available. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (noting *Bivens* remedy is "not an automatic entitlement" for a constitutional violation).

To the extent that plaintiff seeks damages against federal defendants in their individual capacities under 42 U.S.C. § 1983, that statute only creates a cause of action against persons acting under color of state law. *See Stonecipher*.653 F.2d at 401. Here, plaintiff does not allege facts that federal defendants performed any acts under color of state law, and thus plaintiff has failed to state a claim against federal defendants in their individual capacities under § 1983.

### C.     State defendants' motion to dismiss individual capacity claims (doc. # 100)

#### i.     Legal standard

State defendants move to dismiss plaintiff's individual capacity claims under the doctrine of qualified immunity.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

1   As previously stated, "qualified immunity protects government officials 'from liability for

2   civil damages insofar as their conduct does not violate clearly established statutory or constitutional

3   rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (quoting

4   *Harlow*, 457 U.S. at 818). Qualified immunity applies "regardless of whether the government

5   official's error is mistake of law, a mistake of fact, or a mistake based on mixed questions of law and

6   fact." *Pearson*, 555 U.S. at 231 (citation omitted).

7   In addressing qualified immunity, a court must determine (1) whether the facts alleged, taken

8   in the light most favorable to the party asserting the injury, show that the defendant's conduct

9   violated a constitutional right, and (2) whether that right was "clearly established." *Cmty. House,*

10  *Inc.*, 623 F.3d at 967 (quoting *Saucier*, 533 U.S. at 201, modified by *Pearson*, 555 U.S. 223).

11  Addressing the two prongs of the test in this order is often beneficial, but it is not mandatory. Courts

12  may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity

13  analysis should be addressed first in light of the circumstances in the particular case at hand." *Cmty.*

14  *House, Inc.*, 623 F.3d at 967; *see also Pearson*, 555 U.S. 235.

15          **ii.    Analysis**

16  NRS 179D.460 requires individuals convicted of a sexual offense as defined by NRS

17  179D.097 to register with local law enforcement agencies within 48 hours after arriving or

18  establishing residence in Nevada. Under NRS 179D.097(s), a sexual offense committed in another

19  jurisdiction requires registration in Nevada. This provision requires registration for foreign

20  convictions.

21  Here, plaintiff's amended complaint suffers similar deficiencies as to state defendants.

22  Plaintiff has failed to establish that state defendants violated a "clearly established" constitutional

23  right of plaintiff "in light of the specific context of the case . . . ." *Cmty. House, Inc.*, 623 F.3d at 967

24  (quoting *Saucier*, 533 U.S. at 201, modified on other grounds by *Pearson*, 555 U.S. 223).

25  Further, plaintiff has not shown how enforcement of NRS 179D.460 violates clearly

26  established law. Although plaintiff argues that any person of normal intelligence would come to the

27

28

**James C. Mahan**
**U.S. District Judge**

- 21 -

1   conclusion that his Japanese conviction was obtained without due process; this does not negate the

2   registration requirement under NRS 179D.460.

3        Also, to the extent that plaintiff disputes the accuracy of the 2002 and 2003 Japan Country

4   Reports, this contention underscores that it would not have been clear to any reasonable officer that

5   his conduct, in requiring plaintiff to register as a sex offender, violates clearly established law. *See*

6   *Saucier*, 555 U.S. at 202.

7        Lastly, plaintiff argues that state defendants took an oath of office that obligated them to

8   come to the defense of those wronged. However, plaintiff fails to establish how this duty requires,

9   or even permits, state defendants to disregard plaintiff's Japanese conviction so as to protect plaintiff

10  from the requirement that he register as a sex offender.

11  **V.    Leave to Amend**

12       Under Rule 15(a)(2) leave to amend is to be "freely given when justice so requires." FED. R.

13  CIV. P. 15. In general, amendment should be allowed with "extreme liberality." *Owens v. Kaiser*

14  *Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission*

15  *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Absent a showing of an "apparent reason"

16  such as undue delay, bad faith, dilatory motive, prejudice to the defendants, futility of the

17  amendments, or repeated failure to cure deficiencies in the complaint, leave to amend should be

18  granted. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

19       Accordingly, the court will afford plaintiff an opportunity to amend his complaint. The court

20  reminds plaintiff that if he chooses to amend his complaint, he must comply with the requirements

21  of Local Rule 15-1 and file a motion to amend, attaching the proposed amended complaint.

22  Additionally, if the second amended complaint is similarly deficient, the court may conclude that

23  further leave to amend would be futile.

24  . . .

25  . . .

26  . . .

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 22 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VI.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that federal defendants' motion to dismiss official capacity claims (doc. # 81) be, and the same hereby is, GRANTED. Plaintiff's amended complaint is dismissed without prejudice as to federal defendants in their official capacity.[7]

IT IS FURTHER ORDERED that federal defendants' motion to dismiss individual capacity claims (doc. # 82) be, and the same hereby is, GRANTED. Plaintiff's amended complaint is dismissed without prejudice as to federal defendants in their individual capacity.

IT IS FURTHER ORDERED that the clerk of court shall issue new summons as to defendants Roos and Koen, and deliver same to the marshal for service. Plaintiff shall have twenty (20) days in which to furnish to the marshal the required forms USM-285. Within thirty (30) days after plaintiff receives copies of the completed USM-285 forms from the marshal, plaintiff must file a notice with the court identifying which defendants were served and which were not served, if any. Failure to comply with this court order could result in sanctions, including dismissal.

IT IS FURTHER ORDERED that state defendants' motion to dismiss individual capacity claims (doc. # 100) be, and the same hereby is, GRANTED.[8] Plaintiff's amended complaint is dismissed without prejudice as to state defendants.

. . .

. . .

. . .

. . .

---

[7] The court finds that plaintiff may seek prospective injunctive relief against federal defendants in their official capacity. However, plaintiff, if he would like to continue litigating this case, will need to amend his complaint to allege sufficient facts to demonstrate how federal defendants violated plaintiff's constitutional and civil rights.

[8] The court notes that in its previous ordering granting in part and denying in part state defendants' motion to dismiss (doc. # 70), the court dismissed plaintiff's claims against state defendants in their official capacity to the extent plaintiff sought money damages. Plaintiff's claims seeking prospective injunctive relief were not dismissed against state defendants in their official capacity. *See Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988); *see also Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986).

**James C. Mahan**
**U.S. District Judge**

1     IT IS FURTHER ORDERED that plaintiff, if he chooses to amend his complaint, file the

2     motion to amend, attaching the proposed amended complaint, within thirty (30) days of the date of

3     this order. The court reminds plaintiff that if he chooses to amend his complaint, he must comply

4     with the requirements of Local Rule 15-1.

5     DATED December 7, 2012.

6

7     _____

8     **UNITED STATES DISTRICT JUDGE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**